**Nicholas J. Henderson, Esq.** (OSB #074027)
E-Mail:  nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 300
Portland, OR  97204-3211
Telephone:  503-417-0508
Fax:  503-417-0528
Local Counsel for Defendant Trans Union, LLC

**Foster D. Patterson, Esq.** (Admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  fpatterson@schuckitlaw.com
Lead Counsel for Defendant Trans Union, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **SOFIA MARIA KENNEDY,**<br>**Plaintiff,** | **CASE NO. 1:20-cv-01121-CL** |
| **vs.** | **TRANS UNION, LLC'S ANSWER TO**<br>**PLAINTIFF'S COMPLAINT AND**<br>**AFFIRMATIVE DEFENSES** |
| **EQUIFAX INFORMATION SERVICES,**<br>**LLC; EXPERIAN INFORMATION**<br>**SOLUTIONS, INC.; TRANS UNION, LLC;**<br>**BANK OF AMERICA, N.A.; SELECT**<br>**PORTFOLIO SERVICING, INC.; CALIBER**<br>**HOME LOANS, INC.; NATIONSTAR**<br>**MORTGAGE LLC d/b/a MR. COOPER;**<br>**RUSHMORE LOAN MANAGEMENT**<br>**SERVICES LLC; and DOES 1 THROUGH**<br>**100 INCLUSIVE;**<br>             **Defendants.** | |

Trans Union, LLC ("Trans Union"), by counsel, responds to Plaintiff's Complaint (the "Complaint") as follows. For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681s-2(b), 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

**ANSWER**: Trans Union denies that it violated the FCRA (or any other law). Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

2. At the time of filing for Chapter 13 bankruptcy, Plaintiff's home located at 3208 Balsum Way, Medford, Oregon 97504 was subject to two, separate mortgages. The first mortgage (hereinafter, "First Mortgage") was paid directly by Ms. Kennedy pursuant to the plan. The second mortgage (hereinafter, "Second Mortgage") was avoided as a lien pursuant to a court order, declared a non-priority, general unsecured claim and discharged upon Plaintiff's bankruptcy discharge.

**ANSWER**: Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

3.      At the time of filing for Chapter 13 bankruptcy, Plaintiff, owned a rental property located at 5619 S. Fork Little Butte Creek, Eagle Point, Oregon 97524 (hereinafter, "S. Fork Property"), which was subject to a mortgage (hereinafter, "S. Fork Property Mortgage"). The S. Fork Property Mortgage was paid directly by Ms. Kennedy pursuant to the plan.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

4.      Bank of America, N.A. (hereinafter, "BOA"), was the loan originator on the First Mortgage, Second Mortgage and S. Fork Property Mortgage.   BOA transferred the First Mortgage to Seterus, Inc. (hereinafter, "Seterus"), who was acquired by Nationstar Mortgage, LLC d/b/a Mr. Cooper (hereinafter, "Nationstar").   BOA transferred the S. Fork Property Mortgage to Caliber Home Loans, Inc. (hereinafter, "Caliber"), who subsequently transferred it to Rushmore Loan Management Services LLC (hereinafter, "Rushmore").

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

5.      Select Portfolio Servicing, Inc. (hereinafter, "Select") was the loan servicer of the Second Mortgage held by BOA.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule

8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

6.      BOA is inaccurately reporting that Plaintiff's First Mortgage was discharged in bankruptcy, even though it was paid directly by Ms. Kennedy pursuant to the plan of the bankruptcy proceedings and transferred to Seterus.  Further, BOA is inaccurately reporting that Plaintiff's S. Fork Property Mortgage was discharged in bankruptcy, even though it was paid directly by Ms. Kennedy pursuant to the plan of the bankruptcy proceedings and transferred to Caliber.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

7.      Nationstar, successor in interest to Seterus by way of acquisition, is inaccurately reporting that Plaintiff's First Mortgage was discharged in bankruptcy, even though it was paid directly by Ms. Kennedy pursuant to the plan of the bankruptcy proceedings.  Further, Ms. Kennedy continues to make payments on this debt.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

8.      Select is inaccurately reporting the status of Plaintiff's Second Mortgage, whose lien was avoided in Plaintiff's bankruptcy and the debt discharged as a non-priority, general unsecured claim, as an open and past due debt.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

9.    Caliber is inaccurately reporting that Plaintiff's S. Fork Property Mortgage was discharged in bankruptcy, even though it was paid directly by Ms. Kennedy pursuant to the plan of the bankruptcy proceedings and transferred to Rushmore.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

10.    Rushmore is inaccurately reporting that Plaintiff's S. Fork Property Mortgage was discharged in bankruptcy, even though it was paid directly by Ms. Kennedy pursuant to the plan of the bankruptcy proceedings.  Further, Ms. Kennedy continues to make payments on this debt.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

11.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

12.    A pervasive and fundamental misunderstanding presently thrives in the United States regarding the long-term impact that filing a consumer bankruptcy has on the consumer's creditworthiness.  Specifically, consumers tend to believe that since a bankruptcy can be reported on their credit report for ten (10) years, their creditworthiness will be ruined for the same length of time.  This is not true.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

13.    The *majority* of consumer debtors file a consumer bankruptcy to *raise* their FICO Score and remedy their poor creditworthiness.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

14.    In fact, it is possible for consumer debtors to obtain a 700 FICO Score as soon as twelve (12) months from filing a consumer bankruptcy (Chapter 7 or Chapter 13).

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

15.    Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys the consumer's creditworthiness of ten (10) years; however, to perpetrate this bankruptcy myth, creditors intentionally and routinely ignore industry standards

for accurately reporting bankruptcies, as well as the debts included in those bankruptcies, to keep consumers' credit scores low and their interest rates high.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

16.    Creditors know that deviating from recognized credit reporting standards will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

17.    This was not the intent of Congress when it enacted the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## JURISDICTION & VENUE

18.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

19.    This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. 1681.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

20.    This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

21.    Plaintiff alleges that, for purposes of establishing residency under 28 § 1391 (b)(1), named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## GENERAL ALLEGATIONS

22.    Plaintiff alleges that the Second Mortgage lien was avoided in Plaintiff's Chapter 13 bankruptcy filing, was subsequently discharged, and that Select is inaccurately and incompletely reporting this account.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

23.    Plaintiff alleges that the First Mortgage was not discharged in Plaintiff's Chapter 13 bankruptcy, that she has made all of her payments, and that BOA and Nationstar are inaccurately and incompletely reporting this account.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

24.    Plaintiff alleges that the S. Fork Property Mortgage was not discharged in Plaintiff's Chapter 13 bankruptcy, that she made all of her payments, and that BOA, Caliber, and Rushmore are inaccurately and incompletely reporting this account.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

25.     Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

**ANSWER**:     As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

26.     Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized industry standard.

**ANSWER**:     As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

27.     Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard for credit reporting industry standards to purposefully undermine Plaintiff's ability to repair her FICO Score.

**ANSWER**:     Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a

response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

28.    In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## FACTUAL BACKGROUND

29.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

**A.    FICO, Inc.**

30.    FICO is a leading analytics software company with its principal headquarters in San Jose, California.   FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

31.     The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions.

**ANSWER**:     As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

32.     A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan.  FICO periodically updates its scoring models resulting in multiple FICO Score versions.

**ANSWER**:     As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

33.     Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900.  A higher FICO Score demonstrates lower credit risk or less likelihood of default.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

34.    Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

35.    There are twenty-eight (28) FICO Scores that are commonly used by lenders.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

36.    A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

37.    The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

**ANSWER**:    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*  Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

38.    FICO does not control what information is provided on a consumer's credit report.  Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with credit reporting industry standards.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

39.    There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

40.    Each of the five (5) factors is weighted differently by FICO.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

41.    In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

42.    Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments.   The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score.   Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

43.    In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

44.    Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

45.    FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

46.    The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score.  Specifically, both Chapters have the same level of severity with respect to their FICO Score and FICO uses the *filing date,* under both Chapters, to determine how long ago the bankruptcy took place.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**B.**      **Metro 2**

47.      The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening, and collection services industries.

**ANSWER**:      Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

48.      The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format.  The Metro 2 format was developed by CDIA to universally report debts in a particular manner that is understood to be the most accurate in reporting a debt. In other word, the Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

**ANSWER**:      Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

49.      The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

**ANSWER**:      Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans

Union denies the allegations as stated.  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

50.     The credit reporting industry at large depends upon the Metro 2 format and the CDIA's recommendations for reporting debt accurately.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

51.     The CDIA is *the* expert on accurate credit reporting.  In support of this allegation, Plaintiff avers the following:

a.      The CDIA offers a FCRA certificate program for all CRAs.

b.      The CDIA offers a FCRA awareness program for all CRAs.

c.      The CDIA offers a FCRA certificate program for DFs.

d.      The CDIA offers a FCRA awareness program for DFs.

e.      The CDIA offers a Metro 2 learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 format as well as the relationship between multiple fields.

f.      The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and TransUnion.

g.      The CDIA developed a credit reporting resource guide for accurately reporting credit.

**ANSWER**:    Trans Union states that the allegation that "[t]he CDIA is *the* expert on accurate credit reporting," is a legal conclusion and, so stating, denies it.  Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

52.    The CDIA's Metro 2 format is accepted by all CRAs.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

53.    The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide ("CRRG").

**ANSWER**:    Trans Union states that the Credit Reporting Resource Guide® speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

54.    The CRRG outlines the industry standards for most accurately reporting debts using Metro 2 format.

**ANSWER**:    Trans Union states that the Credit Reporting Resource Guide® speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

55.     The CRRG is not readily available to the public.  It can be purchased for $229.45.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

56.     Even if a buyer is ready, willing, and able to pay for the CRRG, the CDIA will not grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

57.     When FICO calculates credit scores, the algorithms use Metro 2 information based on industry standards established by the CDIA.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

58.     The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

59.     If the Metro 2 data received by FICO deviates from industry standards, an inaccurate or incorrect FICO Score results.  If the resulting FICO Score is lower, a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

C.     **e-OSCAR**

60.     e-OSCAR is the web-based, Metro 2 compliant system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes,

**ANSWER**:     Trans Union states that the e-Oscar Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the e-Oscar Format, Trans Union denies the allegations as stated.

61.     When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

**ANSWER**:     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

62.     The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g., "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

**D.    Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

63.    When a consumer files bankruptcy, certain credit reporting industry standards exist.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

64.    Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's creditworthiness.

**ANSWER**:    Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

65.    The Consumer Information Indicator ("CII") is a critical field in the Metro 2 format that indicates a special condition that applies to a specific consumer.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).  66.        Under Metro 2, the CII must be reported on only the consumer to whom the information applies.

**ANSWER**:    Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

67.    It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

68.    In the consumer bankruptcy context, CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed and is active, but no discharge has been entered.

**ANSWER**:    Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

69.     CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed and is active, but no discharge has been entered.  This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a tradeline.  Such reporting alerts any potential lender that the account is no longer in a collectable status and is being handled by a Chapter 13 trustee.

**ANSWER**:     Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

70.     The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed, but the chapter is undesignated/unknown.

**ANSWER**:     Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

71.     The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

**ANSWER**:     Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

72.     The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.  In addition, post discharged balances and past due balances should be updated to reflect zero (0) balances.  The payment history should also not reflect missed payments moving forward.

**ANSWER**:    Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

73.    The CII field is a critical field for consumers as it directly relates and impacts a consumer's creditworthiness.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

74.    The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

75.    Furthermore, the lack of a CII reported suggests that creditors are free to collect against a consumer as an individual, or that no stay exists to prevent *in personam* collection activity.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

76.    Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference than if the appropriate CII indicator were reported.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

77.    The FRCA permits a bankruptcy to be reported for ten (10) years from the date the bankruptcy *was filed.*

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

78.    A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

79.    The bankruptcy's impact on a consumer's FICO Score lessens with the passage of time.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

80.    Accordingly, the failure to reference the bankruptcy filing (CII field) and/or the correct petition date results in a lower FICO Score, which in turn causes credit decision makers to draw a more negative inference regarding a consumer's creditworthiness.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

**E.    Neither Plaintiff's First Mortgage nor Plaintiff's S. Fork Property Mortgage were discharged in her Chapter 13 Bankruptcy**

81.    Plaintiff filed a voluntary petition for Chapter 13 bankruptcy on March 24, 2014 in order to repair her creditworthiness and FICO Score.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

82.    The Chapter 13 Plan provided for payment of the First Mortgage and S. Fork Property Mortgage as was accepted by the court on July 18, 2014, and amended on November 3, 2014.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

83.    Plaintiff's bankruptcy was discharged on September 24, 2019.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**F.    Plaintiff's Second Mortgage was Discharged Pursuant to Chapter 13 Bankruptcy**

84.    Plaintiff filed a voluntary petition for Chapter 13 bankruptcy on March 24, 2014 in order to repair her creditworthiness and FICO Score.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

85.    Plaintiff filed a Motion to Value Property and Avoid Wholly Unsecured Lien on May 1, 2014.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

86.     On June 25, 2014, the Second Mortgage lien was avoided and the debt was declared a non-priority, general unsecured claim and was to be discharged upon the completion of the Chapter 13 Plan and bankruptcy discharge.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

87.     Plaintiff's bankruptcy was discharged on September 24, 2019.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**G.     Plaintiff's Credit Report Contains Inaccurate Adverse Tradelines, which Plaintiff Disputed to no Avail**

88.     On March 19, 2020, Plaintiff ordered a three-bureau credit report from Equifax, Experian, and TransUnion (collectively, the "CRA Defendants") to ensure proper reporting by Plaintiff's creditors (the "March 19 Credit Reports").

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

89.     Plaintiff noticed adverse tradelines in her March 19 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.

**ANSWER**:    Trans Union denies that it violated the FCRA (or any other law).  Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

90.    Plaintiff disputed the inaccurate tradeline regarding the accounts with Select, BOA**,** Caliber, and Rushmore via certified mail to Equifax on or about April 10, 2020 (the "Equifax Dispute").

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

91.    Plaintiff disputed the inaccurate tradeline regarding the accounts with Select, Nationstar, Caliber, and Rushmore via certified mail to Experian on or about April 10, 2020 (the "Experian Dispute").

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

92.    Plaintiff disputed the inaccurate tradeline regarding the accounts with BOA**,** Nationstar, Caliber, and Rushmore via certified mail to TransUnion on or about April 10, 2020 (the "TransUnion Dispute; collectively with the Equifax Dispute and the Experian Dispute, the "Dispute Letters").

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

93.    Plaintiff's Dispute Letters specifically put Select, BOA, Nationstar, Caliber, and Rushmore on notice that Plaintiff filed for bankruptcy, received a bankruptcy discharge, whether or not the account at issue was included and discharged in the bankruptcy, and that Plaintiff's account should be updated accordingly post discharge.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

94.    Plaintiff's Dispute Letters also detailed what was perceived to be problematic about each disputed account, and included six (6) months of prior mortgage payments on both the First Mortgage and S. Fork Property Mortgage to provide additional evidence that the debts were open accounts, still being paid, and not subject to the bankruptcy discharge.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

95.    Plaintiff requested that any derogatory, inaccurate or incomplete reporting be updated.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge

or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

96.     Plaintiff is informed and believes that the CRA Defendants received Plaintiff's Dispute Letters and, in response, sent Plaintiff's disputes to Select, BOA, Nationsar [sic] Caliber, and Rushmore, as the data furnishers, via an ACDV through e-OSCAR.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

97.     On March 20, 2020, Plaintiff ordered a second credit report from the CRA Defendants to determine if her accounts were updated.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

a.    **Inaccuracy - Select**

98.     Despite having actual knowledge, Select continued to report to Equifax that Plaintiff's account, beginning in [REDACTED], being the Second Mortgage, with an account status of "Open", a payment status of "At least 120 days or more than four payments past due", a balance of "$28,603", a monthly payment of "$68", a past due amount of "$5,489", a payment history of "120" or more days late for each month from January of 2020 through April of 2020. Further, Select is not reporting that this account was subject to and discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

99.    Despite having actual knowledge, Select continued to report to Experian that Plaintiff's account, beginning in [REDACTED], being the Second Mortgage, with an account status of "Open", a payment status of "Past due 180 days", a balance of "$28,603", a monthly payment of "$68", a past due amount of "$5,489", a payment history of "120" or more days late for each month from January of 2020 through May of 2020. Further, Select is not reporting that this account was subject to and discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

100.    Plaintiff alleges that Select did not investigate whether Plaintiff filed for bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

101.    Select did not update the tradeline to reflect that Plaintiff obtained a discharge in bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

102.    Both Equifax and Experian provided notice to Select that Plaintiff was disputing the inaccurate and misleading information, but Select failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

103.    Based on Plaintiff's disputes, Select should have known that Plaintiff received a discharge in her bankruptcy proceedings.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

104.    The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

105.    Plaintiff alleges that Select did not review well-established industry standards for credit reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

106.    If Select reviewed such standards, Select would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

107.    Select should have updated the CII to Metro 2 Code "H" to reflect the debt was discharged in Plaintiff's Chapter 13 bankruptcy.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

108.    By continuing to report Plaintiff's account as described in Paragraphs 98 and 99 hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit report that the account was not discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

109.    The lack of investigation is unreasonable,

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**b.    Inaccuracy - BOA**

110.    Despite having actual knowledge, BOA continued to report to Equifax that Plaintiff's account, beginning in [REDACTED], being the First Mortgage, with an account status of "Closed", a payment status of "Included in chapter 13", a payment history of "30 Days Late" for each month from September of 2013 through January of 2104, a payment history of "60 Days

Late" for February of 2014, and a comment of "Account involved in Chapter 13 Debt Adj". Further, this account is not shown as being transferred to another lender, being Seterus.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

111.   Despite having actual knowledge, BOA continued to report to Equifax that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Included in chapter 13", and a comment of "Account involved in Chapter 13 Debt Adj".   Further, this account is not shown as being transferred to another lender, being Caliber.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

112.   Despite having actual knowledge, BOA continued to report to TransUnion that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Wage earner or similar plan", and a comment of "Chap. 13 wage earner plan account".   Further, this account is not shown as being transferred to another lender, being Caliber.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

113.   Despite having actual knowledge, BOA continued to report to TransUnion that Plaintiff's account, beginning in [REDACTED], being the First Mortgage, with an account status

of "Closed", a payment status of "Wage earner or similar plan", and a comment of "Chap. 13 wage earner plan account". Further, this account is not shown as being transferred to another lender, being Seterus.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

114.    Plaintiff alleges that BOA did not investigate whether the First Mortgage and the S. Fork Property Mortgage were excluded from the bankruptcy discharge, and paid in accordance with the accepted terms.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

115.    BOA did not update the tradelines to reflect that Plaintiff continued to make payments, that the accounts were transferred to another lender, and that the accounts were not discharged in the bankruptcy proceedings.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

116.    Both Equifax and TransUnion provided notice to BOA that Plaintiff was disputing the inaccurate and misleading information, but BOA failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

117.    Based on Plaintiff's disputes, BOA should have known that Plaintiff paid her accounts directly pursuant to the plan and that the accounts were transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

118.    The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a debt not subject to bankruptcy discharge and transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

119.    Plaintiff alleges that BOA did not review well-established industry standards for credit reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

120.    If BOA reviewed such standards, BOA would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

121.    By continuing to report Plaintiff's accounts as described in Paragraphs 110 through 113 hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit report that the accounts were delinquent and discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

122.    The lack of investigation is unreasonable.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**c.    Inaccuracy - Nationstar**

123.    Despite having actual knowledge, Seterus (now Nationstar) continued to report to Experian that Plaintiff's account, beginning in [REDACTED], being the First Mortgage, with an account status of "Closed", a payment status of "Debt included in or discharged through bankruptcy chapter 13", and a payment history reflecting "Chapter 13 Bankruptcy" for the month of March of 2019.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

124.    Despite having actual knowledge, Seterus (now Nationstar) continued to report to TransUnion that Plaintiff's account, beginning in [REDACTED], being the First Mortgage, with an account status of "Closed", a payment status of "Wage earner or similar plan", and a comment referencing "Chap. 13 wage earner plan account".  Further, this account is not shown as being transferred to another lender, being Nationstar.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

125.    Plaintiff alleges that Nationstar did not investigate whether the First Mortgage was excluded from the bankruptcy discharge, and paid in accordance with the accepted terms.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

126.    Nationstar did not update the tradelines to reflect that Plaintiff continued to make payments, that the account was transferred to another lender, and that the account was not discharged in the bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

127.    Both Experian and TransUnion provided notice to Nationstar that Plaintiff was disputing the inaccurate and misleading information, but Nationstar failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

128.    Based on Plaintiff's disputes, Nationstar should have known that Plaintiff paid her accounts directly pursuant to the plan and that the accounts were transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

129.    The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a debt not subject to bankruptcy and transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

130.    Plaintiff alleges that Nationstar did not review well-established industry standards for credit reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

131.    If Nationstar reviewed such standards, Nationstar would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

132.     By continuing to report Plaintiff's account as described in Paragraphs 123 through 124 hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit report that the account was delinquent and discharged in Plaintiff's bankruptcy.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

133. The lack of investigation is unreasonable.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**d.     Inaccuracy - Caliber**

134.     Despite having actual knowledge, Caliber continued to report to Equifax that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Included in chapter 13", and a comment of "Account Involved in Chapter 13 Debt Adj".  Further, this account is not shown as being transferred to another lender.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

135.    Despite having actual knowledge, Caliber continued to report to Experian that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Debt included in or discharged through bankruptcy chapter 13", and a payment history reflecting "Chapter 13 Bankruptcy" for the month of June of 2019.  Further, this account is not shown as being transferred to another lender.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

136.    Despite having actual knowledge, Caliber continued to report to TransUnion that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Paid or paying as agreed", and a comment of "Chap. 13 wage earner plan account".  Further, this account is not shown as being transferred to another lender.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

137.    Plaintiff alleges that Caliber did not investigate whether the S. Fork Property Mortgage and was excluded from the bankruptcy discharge, and paid in accordance with the accepted terms.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

138.    Caliber did not update the tradelines to reflect that Plaintiff continued to make payments, that the account was transferred to another lender, and that the account was not discharged in the bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

139.    The CRA Defendants provided notice to Caliber that Plaintiff was disputing the inaccurate and misleading information, but Caliber failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

140.    Based on Plaintiff's disputes, Caliber should have known that Plaintiff paid her account directly pursuant to the plan and that the account was transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

141.    The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a debt not subject to bankruptcy and transferred to another company.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

142.    Plaintiff alleges that Caliber did not review well-established industry standards for credit reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

143.    If Caliber reviewed such standards, Caliber would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

144.    By continuing to report Plaintiff's account as described in Paragraphs 134 through 136 hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit report that the account was discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

145.    The lack of investigation is unreasonable.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**e.    Inaccuracy - Rushmore**

146.     Despite having actual knowledge, Rushmore continued to report to Equifax that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a zero balance and no reported payment history.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

147.     Despite having actual knowledge, Rushmore continued to report to Experian that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a payment status of "Debt included in or discharged through bankruptcy chapter 13", a zero balance, and the only reported payment history reflecting "Chapter 13 Bankruptcy" for the month of November of 2019.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

148.     Despite having actual knowledge, Rushmore continued to report to TransUnion that Plaintiff's account, beginning in [REDACTED], being the S. Fork Property Mortgage, with an account status of "Closed", a zero balance and no reported payment history other than a single month (being November of 2019).

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

149.    Plaintiff alleges that Rushmore did not investigate whether the S. Fork Property Mortgage and [sic] was excluded from the bankruptcy discharge, and paid in accordance with the accepted terms.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

150.    Rushmore did not update the tradelines to reflect that Plaintiff continued to make payments and that the account is not closed and was not discharged in the bankruptcy.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

151.    The CRA Defendants provided notice to Rushmore that Plaintiff was disputing the inaccurate, misleading and incomplete information, but Rushmore failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

152.    Based on Plaintiff's disputes, Rushmore should have known that Plaintiff's account was not closed, has years of payment history, and was not discharged in the bankruptcy.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

153.    The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a debt not subject to bankruptcy.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

154.    Plaintiff alleges that Rushmore did not review well-established industry standards for credit reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

155.    If Rushmore reviewed such standards, Rushmore would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

156.    By continuing to report Plaintiff's account as described in Paragraphs 146 through 148 hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit report that the account is closed and discharged in Plaintiff's bankruptcy.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

157.    The lack of investigation is unreasonable.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**H.    Damages**

158.    Plaintiff pulled the credit reports at issue at a cost for access to the report, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

159.    As a result of the incorrect reporting, Plaintiff has also suffered emotional harm and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start as intended by Congress.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

160.    Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by Select, BOA, Nationstar, Caliber, and Rushmore (collectively, the "Data Furnisher Defendants").

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

161.    The Data Furnisher Defendants' actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## FIRST CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

### (Against Defendants and Does 1-100)

162.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

A.    **The CRA Defendants Failed to Assure Credit Reporting Accuracy**

163.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

164.    Had the CRA Defendants maintained reasonable procedures to assure maximum accuracy, the CRA Defendants would never have allowed the Data Furnisher Defendants to report the accounts as described herein.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

165.    Equifax knew, or should have known, that: (1) the Select Second Mortgage account was discharged in bankruptcy, and that the Select account should not have been reported as described in Paragraph 98 hereinabove on account of the Chapter 13 discharge; (2) the BOA First Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the BOA First Mortgage account should not have been reported as described in Paragraph 110 hereinabove; (3) the BOA S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the BOA S. Fork Property-Mortgage account should not have been reported as described in Paragraph 111 hereinabove; (4) the Caliber S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the Caliber S. Fork Property Mortgage account should not have been reported as described in Paragraph 134 hereinabove; and (5) the Rushmore S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, and that the account should not have been reported as described in Paragraph 146 hereinabove.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

166.    Experian knew, or should have known, that: (1) the Select Second Mortgage account was discharged in bankruptcy, and that the Select account should not have been reported as described in Paragraph 99 hereinabove on account of the Chapter 13 discharge; (2) the Nationstar First Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the Nationstar First Mortgage account should not have been reported as described in Paragraph 123 hereinabove; (3) the Caliber S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the Caliber S. Fork Property Mortgage account should not have been reported as described in Paragraph 135 hereinabove; and (4) the Rushmore S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, and that the account should not have been reported as described in Paragraph 147 hereinabove.. [sic]

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

167.    TransUnion knew, or should have known, that: (1) the BOA First Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the BOA First Mortgage account should not have been reported as described in Paragraph 113 hereinabove; (2) the BOA S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the BOA S. Fork Property Mortgage account should not have been reported as described in Paragraph 112

hereinabove; (3) the Nationstar First Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the Nationstar First Mortgage account should not have been reported as described in Paragraph 124 hereinabove; (4) the Caliber S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, was transferred to another company, and that the Caliber S. Fork Property Mortgage account should not have been reported as described in Paragraph 136 hereinabove; and (5) the Rushmore S. Fork Property Mortgage account was paid by Ms. Kennedy pursuant to the plan and not discharged in the Chapter 13 bankruptcy, and should not have been reported as described in Paragraph 148 hereinabove.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

168.    As a result of the CRA Defendants' violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit and other mental and emotional distress.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**B.    Willful Violations**

169.    The CRA Defendants' violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

Page 51 – TRANS UNION, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

170.    The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the dispute.  Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

171.    To the extent the CRA Defendants do send consumer disputes, the CRA Defendants send these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

172.    The CRA Defendants' employees receive little to no training concerning how to accurately report consumer debt.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a

response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

173.    Instead, the CRA Defendants' employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

174.    The CRA Defendants' employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

175.    The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

176.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

177.    The CRA Defendants violations were willful, rendering the CRA Defendants each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

178.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

179.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(l))

### (Against Defendants and Does 1-100)

180.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

## A.    The Data Furnisher Defendants Failed to Reinvestigate Following Plaintiff's Dispute

181.    Pursuant to 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

**ANSWER**:    Trans Union states that 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1) speak for themselves. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

182.    The Data Furnisher Defendants violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

183.    The CRA Defendants provided notice to the Data Furnisher Defendants that Plaintiff was disputing the inaccurate and misleading information; however, the Data Furnisher Defendants failed to conduct a reasonable investigation as required by the FCRA.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

184.    Based on Plaintiff's dispute, the Data Furnisher Defendants should have known whether or not their respective accounts were included and discharged in Plaintiff's Chapter 13 bankruptcy and ceased its inaccurate reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

185.    The lack of investigation, as required by the FCRA, is unreasonable.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**B.    Willful Violations**

186.    Plaintiff further alleges that the Data Furnisher Defendants have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and, as such, have developed reckless policies and procedures.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

187.    Plaintiff alleges that rather than train its employees on accurate credit reporting and industry standards, the Data Furnisher Defendants' employees tasked with reviewing disputes are expected to confirm the information being reported as accurate instead of investigating the reporting.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**C.    The CRA Defendants Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(l)**

188.    Pursuant to 15 U.S.C. [sic] 1681i(a)(l), the CRA Defendants were required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Data Furnisher Defendants' accounts.

**ANSWER**:    Trans Union states that 16 USC 1681i(a)(1) speaks for itself.  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

189.    Thus, the CRA Defendants failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the accounts within the statutory time frame.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

190.    The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

191.    Plaintiff alleges the CRA Defendants are readily familiar with Metro 2 guidelines and credit reporting industry standards.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

192.    Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

193.    The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

**ANSWER**:    As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

194.    The CRA Defendants failed to conduct a reasonable investigation because any basic investigation would have uncovered that the Data Furnisher Defendants were not reporting the accounts at issue correctly.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a

response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

195.    Had Equifax and Experian conducted a proper investigation it could have closed or bookended the Select debt by adding a notation on the credit report on its tradeline that the debt was in fact included and discharged in Plaintiff's Chapter 13 bankruptcy.  However, Equifax continued to report the account as described in Paragraph 98 hereinabove and Experian continued to report the account as described in Paragraph 99 hereinabove.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

196.    Had the CRA Defendants conducted a proper investigation it could have bookended the Caliber debt by adding a notation on the credit report on its tradeline that the debt was not discharged in Plaintiff's Chapter 13 bankruptcy.  However, Equifax continued to report the account as described in Paragraph 134 hereinabove, Experian continued to report the account as described in Paragraph 135 hereinabove, and TransUnion continued to report the account as described in Paragraph 136 hereinabove.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

197.    Had the CRA Defendants conducted a proper investigation it could have bookended the Rushmore debt by addition [sic] a notation on the credit report on its tradeline that the debt was not closed or discharged in Plaintiff's Chapter 13 bankruptcy.  However,

Equifax continued to report the account as described in Paragraph 146 hereinabove, Experian continued to report the account as described in Paragraph 147 hereinabove, and TransUnion continued to report the account as described in Paragraph 148 hereinabove.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

198.   Had Equifax and TransUnion conducted a proper investigation it could have bookended the BOA debts by adding a notation on the credit report on its tradeline that the debts were not discharged in Plaintiff's Chapter 13 bankruptcy.  However, Equifax continued to report the accounts as described in Paragraphs 110-111 hereinabove, and TransUnion continued to report the accounts as described in Paragraphs 112-113 hereinabove.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

199.   Had Experian and TransUnion conducted a proper investigation it could have bookended the Nationstar debt by adding a notation on the credit report on its tradeline that the debt was not discharged in Plaintiff's Chapter 13 bankruptcy.  However, Experian continued to report the account as described in Paragraph 123 hereinabove, and TransUnion continued to report the account as described in Paragraph 124 hereinabove.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a

response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

200.    The CRA Defendants, therefore, did not conduct the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## THIRD CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))

### (Against Defendants and Does 1-100)

201.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

**A.    The CRA Defendants Failed to Review and Consider all Relevant Information**

202.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

203.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**B.    Willful Violations**

204.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

205.    In the alternative, the CRA Defendants were negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

206.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendants and Does 1-100)

207.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

**A.    The CRA Defendants Failed to Delete Disputed and Inaccurate Information**

208.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

209.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**B.    Willful Violations**

210.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

211.    In the alternative, the CRA Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

212.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

**PRAYER FOR RELIEF**

213.    WHEREFORE, Plaintiff prays for judgment as follows:

a.      For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

b.      Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

c.      Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

d.      Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

e.      For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

f.      For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## **AFFIRMATIVE DEFENSES**

1.      Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.

2.      Trans Union's reports concerning Plaintiff were true or substantially true.

3.      Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.

4.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

5.      At all relevant times, Trans Union acted within the absolute and qualified privileges afforded it under the FCRA, the United States Constitution, applicable State Constitutions and the common law.

6.      Plaintiff's claims are barred, in whole, or in part, by the equitable theories of estoppel, waiver and laches.

7.      Plaintiff has failed to take reasonable steps to mitigate her damages, if any.

8.      Plaintiff's damages are the result of acts or omissions committed by Plaintiff.

9.      Plaintiff's damages are the result of acts or omissions committed by the other parties over whom Trans Union has no responsibility or control.

10.     Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.

11.     Any claim for exemplary or punitive damages asserted by Plaintiff violates Trans Union's rights under the Due Process and Excessive Fines clauses of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State Constitutions and under the First Amendment of the United States Constitution and the analogous provisions of applicable State Constitutions.

12.     Trans Union reserves the right to assert additional defenses as may become apparent through additional investigation and discovery.

WHEREFORE, Defendant Trans Union, LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Complaint, and that Trans Union, LLC, be awarded its costs incurred in defending this action, along with such other relief as this Court deems equitable and just.

Dated:  August 4, 2020.

Respectfully submitted,

SCHUCKIT & ASSOCIATES, P.C.


*s/ Foster D. Patterson*
**Foster D. Patterson, Esq.**
(Admitted *Pro Hac Vice*)
Telephone:  317-363-2400
**Lead Counsel for Defendant Trans Union, LLC**


**Nicholas J. Henderson, Esq.**
OSB #074027
Telephone:  503-417-0508
**Local Counsel for Defendant Trans Union, LLC**